SHERRY et al., Appellants,

v.

GEISSLER U. PEHR GmbH et al., Appellees.

[Cite as *Sherry v. Geissler U. Pehr GmbH* (1995), 100 Ohio App.3d 67.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66551.

Decided March 23, 1995.

68

*Nurenberg, Plevin, Heller & McCarthy, Thomas Mester, Joel Levin* and *James T. Schumacher,* for appellants.

*Kaufman & Cumberland, Frank J. Cumberland* and *David B. Webster; Winston & Strawn; John R. Keys; McCarthy, Lebit, Crystal & Haiman Co., L.P.A.,* and *David A. Schaefer,* for appellees.

HARPER, Judge.

Plaintiffs-appellants, Brian R. and Debbie Sherry, appeal from the dismissal of their complaint by the Court of Common Pleas of Cuyahoga County for lack of personal jurisdiction. Appellants submit that the trial court erred in dismissing the action under Civ.R. 12(B)(2), since the conduct of defendants-appellees, Geissler U. Pehr, GmbH, and Villas Construct, GmbH, "falls squarely within the scope of" R.C. 2307.382, Ohio's long-arm statute. A careful review of the record compels affirmance.

I

Appellants filed their complaint in the trial court on November 25, 1992.[1] They asserted therein that defendants, Geissler U. Pehr, GmbH ("Geissler") and/or Villas Construct, GmbH ("Villas"),[2] were corporations or business entities which (1) regularly did or solicited business and/or engaged in other persistent courses of conduct or derived substantial revenue from goods used or consumed or services rendered in the state of Ohio; (2) "designed, manufactured, sold and/or otherwise placed a defective felt winding machine ['the winder'] into the stream of commerce"; and (3) Mr. Sherry was injured while servicing the winder as required in the course and scope of his employment. Based upon these allegations, appellants set forth causes of actions for product liability under R.C. 2307.73 *et seq.*, negligence, and loss of services on behalf of Mrs. Sherry.

Villas filed a motion to dismiss appellants' complaint on March 4, 1993. Villas first asserted that the trial court lacked personal jurisdiction over it, since the exercise of said jurisdiction would violate the Due Process Clause of the United States Constitution. Next, Villas submitted that it never had continuous or systematic contacts with the state of Ohio that would trigger this state's long-arm statute. Finally, Villas found support for its motion in appellants' failure to specify that their claims arose out of Villas' contacts with the state.

As the current managing director for Pehr Technik ("Technik"), Dr. Eckart Pehr prepared an affidavit in support of Villas' motion to dismiss. Therein, it was initially explained that Villas was not in existence when Tremco, Inc. ("Tremco"), an Ohio corporation, and Geissler negotiated the sale of the winder in June 1984. Rather, Villas was formed in August 1984 as a corporation under Austrian law with its principal place of business always located in Villach, Austria.

Dr. Pehr provided further that Villas filed for bankruptcy under the laws of Austria and was liquidated in 1990. The company was reorganized under Austrian law and now does business as Technik in Villach, Austria.

Dr. Pehr admitted in his affidavit that Villas sold approximately $30,000 in spare parts to Tremco between October 1985 and September 1989. According to him, "[t]hese parts partly related to the felt winder." The sales were document-

---

1. The action was removed to the United States District Court for the Northern District of Ohio, Eastern Division, on January 11, 1992 pursuant to Section 1441, Title 28, U.S.Code. Villas Construct, GmbH filed a motion to dismiss in that court on February 16, 1993. The action was remanded to the Court of Common Pleas of Cuyahoga County on February 17, 1993.

2. Defendants John Doe, John Foe, John Goe, and John Hoe were dismissed without prejudice on October 27, 1993 pursuant to Civ.R. 4(E).

ed and submitted to the trial court via seven purchase orders/invoices attached to Villas' motion.

Notwithstanding the sale of these spare parts, Dr. Pehr set forth that Villas has never done business or solicited business on a regular basis in Ohio, does not engage in any other persistent course of conduct here, nor does it derive any substantial revenues from goods used or consumed or services rendered in the state. Finally, Dr. Pehr stated that neither Villas nor Technik has done any business in the state of Ohio since September 1989.

Geissler filed a similar motion to dismiss appellants' complaint on March 25, 1993. In its memorandum in support of the motion, Geissler established that it is a company registered to do business in Austria, with its principal place of business located in Villach, Austria. It also asserted that Tremco initiated the purchase of the Italian-manufactured winder from Geissler at a trade fair in Atlanta, Georgia, in 1984.

Two affidavits were attached to Geissler's motion to dismiss. The affiants were Dipl.–Ing Wittich Geissler, a shareholder and manager at Geissler until 1990, and Dr. Pehr, who was involved in Geissler's business from 1985 to 1990. Both of these individuals attested that the sale of the winder was the only business conducted in Ohio by Geissler. They denied that Geissler solicited business in Ohio, otherwise advertised here, and derived financial benefits from any entity located in the state beyond the sale of the winder. Dr. Pehr acknowledged in his affidavit that Geissler's agents visited the state of Ohio for the purpose of the initial sale and installation of the winder. Finally, Wittich Geissler stated that an Italian company designed and manufactured the winder, and Geissler integrated it in the "manufactoryline."

The trial court heard arguments with regard to Villas' and Geissler's motions to dismiss on June 16, 1993. No witnesses testified at the motion hearing for appellants, Villas, or Geissler. Appellants' argument in opposition to the motions, as presented by their counsel, was partially based upon interrogatories which were responded to by Tremco in a bill of equity action then pending in the Court of Common Pleas of Cuyahoga County, case No. CV–226934. These interrogatories are not a part of the record before this court. Nor are other documents referred to by appellants' counsel, including letters from Tremco to Geissler relating to the sale of the winder.

The trial court granted Villas' and Geissler's motions to dismiss on October 27, 1993. The court cited Civ.R. 12(B)(2), lack of personal jurisdiction, as the basis for the rulings.

## II

This appeal followed with appellants claiming as error:

"1. The trial court erred to the prejudice of appellants by granting appellee's [*sic*] motion to dismiss for lack of personal jurisdiction."

The determination as to whether Ohio has personal jurisdiction over a nonresident involves a two-step process. The court must first consider the plain language of Ohio's long-arm statute and applicable Civil Rule.[3] See R.C. 2307.382; Civ.R. 4.3; *Kentucky Oaks Mall v. Mitchell's* (1990), 53 Ohio St.3d 73, 559 N.E.2d 477. If jurisdiction does lie, the court must then decide whether granting jurisdiction comports with due process under the Fourteenth Amendment to the United States Constitution. See *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *U.S. Sprint Communications Co. L.P. v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 624 N.E.2d 1048; *Fallang v. Hickey* (1988), 40 Ohio St.3d 106, 532 N.E.2d 117.

Though appellants are entitled to have the factual allegations sustaining personal jurisdiction construed in their favor, they nonetheless first must plead or otherwise make a *prima facie* showing of jurisdiction over Geissler and Villas. See *Jurko v. Jobs Europe Agency* (1975), 43 Ohio App.2d 79, 85, 72 O.O.2d 287, 290–291, 334 N.E.2d 478, 482. Since matters of jurisdiction are often not apparent on the face of the summons or pleadings, evidentiary hearings are an appropriate vehicle for resolving jurisdictional issues. A trial court may thus hear the matter and receive oral testimony. See *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 14 OBR 371, 471 N.E.2d 165. Since the trial court herein held such a hearing, appellants had the burden of proving jurisdiction by a preponderance of the evidence. *Id.;* see, also, *Am. Greetings Corp. v. Cohn* (C.A. 6, 1988), 839 F.2d 1164; *Friedman v. Speiser, Krause & Madole, P.C.* (1988), 56 Ohio App.3d 11, 565 N.E.2d 607.

## A

Regarding the first step, Ohio's long-arm statute, R.C. 2307.382, governs personal jurisdiction over a nonresident defendant. It sets forth the specific activities for which a nonresident corporation may be subject to the *in personam* jurisdiction of an Ohio court as follows:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

---

**3.** In *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479–480, the Supreme Court of Ohio held "that the statute and civil rule are consistent and in fact complement each other."

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state;

" * * *

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]"

Similarly, the applicable Civil Rule, Civ.R. 4.3, describes in relevant part the persons subject to long-arm jurisdiction and extraterritorial service of process:

"(A) When service permitted. Service of process may be made outside of this state * * * upon a person who * * *, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state;

" * * *

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]"

In the present case, appellants' complaint was based upon three claims for relief, to wit: products liability, negligence, and loss of services. A products liability action could be pursued as an action in tort that is grounded upon negligence, in contract, or with regard to a representation. See *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 229–230, 35 O.O.2d 404, 405–406, 218 N.E.2d 185, 187–188. Generally, a plaintiff will plead strict liability and negligence with regard to an alleged failure to warn, as appellants did herein, *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 258, 556 N.E.2d 1177, 1183, in addition to pleading a representation claim. However, appellants did not set forth a products liability claim based upon a contract, and a contract is not contained in the record. We, therefore, decline to apply R.C. 2307.382(A)(2) to the facts of this case, though appellants argue that this subdivision, if not (A)(1) or (A)(4), would allow the trial court to proceed with their action against Geissler and Villas.

Appellants stated facts which arguably allow Ohio courts to exercise personal jurisdiction over Geissler and Villas under R.C. 2307.382(A)(1) or (A)(4). This court must now determine if the defendants' actions amounted to sufficient

contacts as meant by these provisions of Ohio's long-arm statute to render them subject to personal jurisdiction by the trial court.

### A1.  Transacting Any Business

### R.C.  2307.382(A)(1)

A foreign corporation submits to the personal jurisdiction of an Ohio court under R.C. 2307.382(A)(1) if its activities lead to "transacting any business" in this state.  "Transacting any business" is such a broad statement, it has given rise to a multitude of cases which "have reached their results on highly particularized fact situations, thus rendering any generalization unwarranted."  22 Ohio Jurisprudence 3d (1980) 430, Court and Judges, Section 280;  see *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 638 N.E.2d 541; *U.S. Sprint, supra.*  Left with the bare words of the statute, a court must determine, case-by-case, whether a nonresident is transacting business in the state of Ohio.  See *U.S. Sprint,* 68 Ohio St.3d at 185, 624 N.E.2d at 1052.

The Supreme Court of Ohio consistently maintains that the mere solicitation of business by a foreign corporation does not constitute transacting business in Ohio.  *U.S. Sprint,* citing *Wainscott v. St. Louis–San Francisco Ry. Co.* (1976), 47 Ohio St.2d 133, 1 O.O.3d 78, 351 N.E.2d 466.  "The term 'transact' as utilized in the phrase '[t]ransacting any business' encompasses ' "to carry on business" ' and ' "to have dealings," ' and is ' "broader" ' * * * than the word 'contract.' " *Goldstein,* 70 Ohio St.3d at 236, 638 N.E.2d at 544, quoting *Kentucky Oaks Mall,* 53 Ohio St.3d at 75, 559 N.E.2d at 479.

■ With regard to Villas, Pehr's affidavit attached to its ·motion to dismiss discloses that the company supplied spare parts for the winder through a four-year period and received ample compensation for the parts, approximately $30,000.  Seven Villas purchase orders/invoices are present in the record to confirm this activity.  This court concludes that this defendant "transacted business" in this state pursuant to R.C. 2307.382(A)(1), since it carried on business and had dealings with Tremco over a multiple-year period.

■ We reach a different conclusion as to Geissler, since the record fails to reveal that it solicited business in the state of Ohio as meant by R.C. 2307.382(A)(1).  Appellants failed to provide any affidavits or other evidence, including a contract, which established exactly how Tremco and Geissler negotiated the sale of the winder.  In other words, though the record shows that Tremco became aware of the winder's existence at a trade show in Georgia, no information confirmed, *e.g.,* that Geissler did anything but ship the winder to and install it in the state of Ohio.  This court is even unaware as to how much Tremco paid Geissler for the machinery.  Under these circumstances, appellants fail to

persuade us that Geissler either carried on dealings or had business with this state through the sale of one piece of equipment to Tremco. Compare *McGee v. Internatl. Life Ins. Co.* (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (insurer subject to personal jurisdiction in forum state when insurance contract delivered there, the premiums were mailed from there and the insured resided in the forum state at the time of this death). The question thus becomes whether personal jurisdiction is founded in R.C. 2307.382(A)(4).

### A2. Tortious Injury by Act Outside State

### R.C. 2307.382(A)(4)

R.C. 2307.382(A)(4) gives the trial court jurisdiction over Geissler on the facts alleged by appellants if " * * * [Geissler] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]"

As stated *supra*, appellants had the burden to demonstrate that the trial court possessed personal jurisdiction over Geissler by a preponderance of the evidence. *Giachetti; Friedman.* The contents of the two affidavits attached to Geissler's motion to dismiss establish, and appellants fail to offer any evidence to the contrary, that the company neither regularly does or solicits business, engages in a persistent course of conduct, nor derives substantial revenue from goods sold in this state. All the trial court had, and all we have, is that Tremco purchased the winder from Geissler for an undisclosed price. One sale of a winder to an Ohio corporation, without more, fails to bring Geissler within the jurisdiction of an Ohio state court under R.C. 2307.382(A)(4). Insofar as the elements provided in R.C. 2307.382(A)(4) are necessary to sustain jurisdiction, appellants failed in their proof under that part of the long-arm statute. See *Stewart v. Bus & Car Co.* (N.D.Ohio 1968), 47 O.O.2d 376.

### B. Due Process Requirements

The last issue this court must resolve, notwithstanding our finding that Villas transacted business in this state, is did the trial court err in dismissing appellants' complaint based upon lack of personal jurisdiction? After all, once it is determined that a defendant transacted business in this state pursuant to the Ohio long-arm statute, a court must still examine whether the exercise of personal jurisdiction comports with due process of law under the Fourteenth Amendment to the United States Constitution.

In order for a state court to subject a foreign corporation to a judgment *in personam*, the corporation must "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.' * * * " (Citations omitted.) *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102; *U.S. Sprint, supra.* This generally requires that the defendant purposely avails itself of the privileges of conducting activities in the forum state. *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1295. See *CompuServe, Inc. v. Trionfo* (1993), 91 Ohio App.3d 157, 631 N.E.2d 1120; *Universal Coach, Inc. v. New York City Transit Auth.* (1993), 90 Ohio App.3d 284, 629 N.E.2d 28. The United States Supreme Court stressed with regard to this rule that the analysis "cannot simply be mechanical or quantitative," but, rather, whether due process is satisfied depends "upon the quality and nature of the activity." *Internatl. Shoe Co.*, 326 U.S. at 319, 66 S.Ct. at 159–160, 90 L.Ed. at 103–104.

A nonresident's ties must "create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528, 542; see, also, *McGee*, 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226. In *Asahi Metal Industry Co. v. Superior Court* (1987), 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92, the United States Supreme Court analyzed the term "substantial connection" in light of the disparate treatment of its decision in *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490, by lower courts. It stated as follows:

" * * * The 'substantial connection,' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* [Citations omitted.] The placement of a product into the stream of commerce, without more is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. * * * " (Emphasis *sic.*) *Asahi Metal Industry Co.*, 480 U.S. at 112, 107 S.Ct. at 1032, 94 L.Ed.2d at 104.

The United States Supreme Court also stated the following in *World–Wide Volkswagen:*

" * * * Hence if the sale of a product of a manufacturer or distributor * * * is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its *allegedly defective merchandise has there been the source of injury to its owners*

*or to others."* (Emphasis added.) *Id.,* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501–502.

Therefore, "[a]n action will be deemed not to have arisen from the defendant's contacts with the forum state * * * when they are unrelated to the operative facts of the controversy." *Creech v. Roberts* (C.A.6, 1990), 908 F.2d 75, 80; see, also, *Reynolds v. Internatl. Amateur Athletic Fedn.* (C.A.6, 1994), 23 F.3d 1110.

██ In the present case, Villas presented a three-part argument in its motion to dismiss. Its first assertion was that the appellants' failure to establish a causal connection between its contacts with the state of Ohio and the cause of action requires a dismissal of the action as to that defendant. We agree with this assertion.

Appellants alleged in their products liability claim for relief that:

1. "Defendant(s) Geissler and/or Villas designed, manufactured, sold and/or otherwise placed a defective felt winding machine into the stream of commerce";

2. "The Winder, as manufactured, was defective in manufacture and construction * * * in design or formulation * * * due to inadequate warnings and instructions * * * because it did not conform to a representation made by the manufacturer * * * ";

3. "Defendants Geissler, Villas * * * under * * * [R.C. 2307.78], is liable as the supplier of the Winder";

4. "As a direct and proximate result of the defective winder, Plaintiff Brian R. Sherry was caused to suffer * * * ";

5. "As a result of the defective product, Plaintiff * * * was caused to seek necessary medical treatment * * *";

6. "As a further direct and proximate result of the defective product, Plaintiff * * * lost time from his normal employment * * * ";

7. "As a further direct and proximate result of the defective product, Plaintiff['s] * * * ability to live and work free * * * "; and

8. "Each of the defective conditions of the Winder * * * was a proximate cause of the harm * * *."

Appellants, in their claim for relief under a negligence theory, claimed that:

"Defendants, Geissler, Villas * * * were negligent in the design, manufacture, testing, marketing, sale, maintenance and/or repair of The Winder. In addition, each of these defendants negligently failed to warn Plaintiff concerning hazards about which each defendant knew and/or should have known."

It is thus apparent that appellants' complaint was premised upon the defective condition of the winder itself and nothing more.

Consequently, even *acknowledging* that Villas supplied parts to Tremco, since appellants' complaint was premised upon a defective winder and not upon defective parts which were later installed in the winder, there can be no exercise of personal jurisdiction by the trial court.

Moreover, even accepting appellants' minimal allegation that Villas was negligent in the "repair of The Winder," appellants failed to provide evidence regarding any repairs on the machine which were performed by Villas. The only connection between Tremco and Villas was that the latter shipped replacement parts to Tremco, not that it conducted the repairs. These activities do not constitute a basis for concluding that Villas' contacts with this state allowed for the exercise of personal jurisdiction under subsection (1) for "transacting business" here, since appellants did not allege that any spare part was defective or Villas negligently instituted repairs of the winder.

We surmise that appellants believed that Villas was either a designer, manufacturer, tester, marketer, seller, maintainer, or supplier of the winder. Villas refuted this allegation in the affidavits attached to its motion to dismiss and included the fact that it was not even in existence when Tremco purchased the winder. Appellants offered no evidence to the contrary. Based upon the constitutional guarantee of due process, the trial court did not abuse its discretion in granting Villa's motion to dismiss pursuant to Civ.R. 12(B)(2). *Reynolds; Creech;* see, also, *U.S. Sprint* (Pfeifer, J., dissenting opinion); cf. *Speck v. Mut. Serv. Life Ins. Co.* (1990), 65 Ohio App.3d 812, 585 N.E.2d 509 (Civ.R. 4.3[A] requires that the conduct from which a minimum contact is alleged to exist must have "caused an event to occur out of which the claim which is the subject of the complaint arose").

Appellants' assignment of error is overruled.

*Judgment affirmed.*

PATTON, P.J., and PORTER, J., concur.