**HERITAGE FUNDING AND LEASING COMPANY et al., Appellants,**

v.

**PHEE, Appellee.**

[Cite as *Heritage Funding & Leasing Co. v. Phee* (1997), 120 Ohio App.3d 422.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE11–1442.

Decided June 30, 1997.

*Berry, Shoemaker & Clark* and *Kevin L. Shoemaker,* for appellants.

*Dinsmore & Shohl, James Vinch* and *Jerome C. Tinianow,* for appellee.

DESHLER, Judge.

This is an appeal by plaintiffs, Heritage Funding & Leasing Company, and William M. Millon, Jr., from a judgment of the Franklin County Court of Common Pleas, granting defendant's motion to dismiss for lack of personal jurisdiction.

Plaintiff Heritage Funding & Leasing Co. ("Heritage") is a company located in Bergen County, New Jersey. Plaintiff William M. Millon, Jr. is the owner of Heritage. Votek Systems, Ltd. ("Votek, Ltd.") was, at the time of the activities alleged in this action, a Canadian company, with its principal place of business in Ontario, Canada. Votek Systems, Inc. ("Votek, Inc.") was a United States subsidiary of Votek, Ltd. Votek, Inc.'s principal place of business was Dublin, Ohio. Defendant, Howard Phee, served in the capacity as a vice president of

finance and senior vice president for Votek, Ltd., and as a vice president for Votek, Inc.

On February 21, 1996, plaintiffs filed a complaint against defendant, alleging that defendant engaged in fraudulent and tortious conduct in connection with a sale and leaseback agreement. Plaintiffs' complaint set forth the following allegations. On March 2, 1992, Heritage entered into a "Master Lease Agreement" with Votek, Inc. The agreement provided that, from time to time, Heritage was to lease to Votek, Inc. and/or Votek, Ltd.[1] certain computer equipment to be used by either Votek or its customers.

On July 14, 1992, Heritage entered into a sale and leaseback agreement with Votek, Inc., under which Heritage agreed to buy from Votek, Inc. certain equipment for $58,000 (designated hereafter as "Schedule B" equipment), and thereafter to lease the equipment back to Votek, Inc. pursuant to the terms of the master lease. Defendant executed the sale and leaseback agreement.

On June 15, 1992, defendant advised Heritage that he would arrange for Votek to enter into the sale and leaseback agreement for the equipment, which, defendant assured Heritage, had already been, or was about to be, purchased from the manufacturer, IBUS. The equipment was to be shipped to Votek, Inc.'s facility in Dublin, Ohio, where it was to be modified and then later installed at Golden Eagle Equipment Service Group, Inc. ("Golden Eagle"), located at 4601 Temple City Boulevard, El Monte, California.

In addition to executing the sale and leaseback agreement, defendant also executed and presented to Heritage the Schedule B equipment and a certificate of acceptance, as well as certain U.C.C. documents indicating that Votek, Inc. had title free and clear to the equipment at issue. Based upon representations by defendant, Heritage sent $58,000 to Votek, Inc. at its Dublin, Ohio office on July 20, 1992, as payment for the purchase of the Schedule B equipment.

For a period of time, Votek made lease payments for the Schedule B equipment, but thereafter Votek defaulted in making required payments due under the master lease agreement. In January 1994, Heritage was advised that Golden Eagle had never been a customer of Votek, and that neither Golden Eagle nor Votek possessed the Schedule B equipment. IBUS subsequently informed Heritage that the Schedule B equipment had never been ordered by Votek or defendant. Further, despite defendant's representations to the contrary, Golden Eagle had never been approved by Votek as the party to which the Schedule B equipment was to be leased or sold. On April 6, 1994, Votek was declared insolvent and placed in a court-appointed receivership. Plaintiffs' complaint

---

1. When used collectively, Votek, Inc. and Votek, Ltd. will be referred to as "Votek."

alleged that representations by defendant concerning the Schedule B equipment were made with the intent to deceive and defraud Heritage by inducing Heritage to pay to Votek $58,000 for goods which did not, in fact, exist.

On May 15, 1996, defendant filed a motion to dismiss pursuant to Civ.R. 12(B)(2), alleging that the trial court lacked personal jurisdiction over the defendant. Plaintiffs filed a memorandum in opposition to the motion to dismiss on July 12, 1996. In response to defendant's motion to dismiss, plaintiffs submitted the affidavit of William M. Millon, Jr., and the deposition testimony of defendant.

On September 30, 1996, the trial court rendered its decision, granting defendant's motion to dismiss. The decision of the trial court was journalized by judgment entry filed October 9, 1996. On appeal, plaintiffs set forth the following assignment of error for review:

"The lower court erred in holding that the Defendant–Appellant was not amenable to personal jurisdiction."

In granting defendant's motion to dismiss, the trial court held that plaintiffs failed to set forth a sufficient factual basis for permitting the court to assert personal jurisdiction over defendant in his individual capacity. More specifically, the court concluded that the evidence submitted indicated that all of the alleged activities on the part of defendant were done in his capacity as an officer of Votek, Ltd. and Votek, Inc., and thus the court agreed with defendant's contention that he could not be held personally liable under the "corporate shield doctrine."

The trial court made its determination regarding the issue of jurisdiction without conducting an evidentiary hearing. Accordingly, the trial court was "required to view allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiffs, resolving all reasonable competing inferences in their favor." *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544.

In *Sherry v. Geissler U. Pehr GmbH* (1995), 100 Ohio App.3d 67, 72, 651 N.E.2d 1383, 1385, the court noted:

"The determination as to whether Ohio has personal jurisdiction over a nonresident involves a two-step process. The court must first consider the plain language of Ohio's long-arm statute and applicable Civil Rule. See R.C. 2307.382; Civ.R. 4.3; *Kentucky Oaks Mall v. Mitchell's* (1990), 53 Ohio St.3d 73, 559 N.E.2d 477. If jurisdiction does lie, the court must then decide whether granting jurisdiction comports with due process under the Fourteenth Amendment to the United States Constitution. See *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *U.S. Sprint Communications Co. L.P. v. Mr.*

*K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 624 N.E.2d 1048; *Fallang v. Hickey* (1988), 40 Ohio St.3d 106, 532 N.E.2d 117." (Footnote omitted.)

Concerning the first part of the analysis, Ohio's long-arm statute, R.C. 2307.382, sets forth the requirements for personal jurisdiction over a nonresident defendant. Plaintiffs asserted jurisdiction under subdivisions (3), (4) and (7) of R.C. 2307.382(A). Those provisions provide as follows:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

" * * *

"(3) Causing tortious injury by an act or omission in this state;

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

" * * *

"(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity."

■ The complaint and supporting documentary evidence submitted by plaintiffs in response to defendant's motion to dismiss contain allegations that defendant made fraudulent representations regarding a sale and leaseback agreement which were relied upon by plaintiffs to their detriment. Upon review, we find that the conduct alleged by plaintiffs is sufficient to establish a prima facie case of personal jurisdiction under Ohio's long-arm statute pursuant to R.C. 2307.382(A)(3), which provides for personal jurisdiction over persons "[c]ausing tortious injury by an act or omission in this state."

Plaintiffs' complaint and the affidavit of Millon allege that defendant misrepresented that certain Schedule B equipment, the subject of the sale and leaseback agreement, had been purchased by Votek, Inc., that the equipment had been shipped to Votek, Inc.'s place of business in Ohio for modification, and that the equipment had then been shipped to Golden Eagle in California as part of the lease arrangement. The record indicates that defendant signed the relevant documents regarding the agreement, including a certificate of acceptance stating that the equipment had been installed in California. Defendant also signed U.C.C. documents, relating to the Schedule B equipment, which were filed in Ohio. In July 1992, Millon contacted defendant to request IBUS invoices or an equipment list identifying the serial numbers for the equipment. Defendant assured Millon that the documents would be forthcoming. In reliance upon these

representations, Heritage sent a payment of $58,000 to Votek, Inc.'s place of business in Dublin, Ohio pursuant to defendant's direction.

Millon's affidavit avers that in August 1993, after defendant was no longer an employee with Votek, Millon was advised by an officer of Votek that Votek would not make any payments on the Schedule B equipment in the future because Golden Eagle had never been a customer of Votek and the equipment never existed. Millon's affidavit further avers that he engaged in numerous telephone conversations with defendant at Votek, Inc.'s Dublin, Ohio office regarding negotiations surrounding the leaseback agreement and the Schedule B equipment. In addition to the telephone calls by defendant from Ohio regarding the equipment at issue, the complaint and affidavit allege that defendant engaged in other purposeful acts within Ohio, such as directing that payment for the equipment be sent to Votek, Inc.'s Ohio office and directing that Millon send documents relative to the equipment to Ohio. The facts presented, construed most strongly in favor of plaintiffs, allege that defendant made fraudulent misrepresentations in Ohio through a series of telephone calls with the purpose of inducing plaintiffs to enter into an agreement and send payment to Ohio for equipment that defendant knew did not exist. Such allegations are sufficient to establish a prima facie showing of jurisdiction under Ohio's long-arm statute.

Defendant argues that jurisdiction is lacking under the long-arm statute because the facts indicate that the Schedule B documents, including the leaseback agreement and certificate of acceptance, were signed in Canada. We disagree. The facts as alleged indicate that defendant and Millon engaged in a continuing course of telephone negotiations involving the leaseback agreement and Schedule B equipment, that defendant was in Ohio during those telephone conversations, and that Millon relied on those representations to send payment to Ohio. Although the leaseback agreement and other documents were signed in Canada, the ongoing course of negotiations and defendant's alleged misrepresentations made during those negotiations, inducing plaintiffs to send payment to Ohio in reliance thereon, constituted the acts that form the basis of the tort claims alleged. Thus, the fact that the agreement and other documents were ultimately signed in Canada is not dispositive of the jurisdictional issue.

Having found that plaintiff has set forth allegations that establish a prima facie case of personal jurisdiction pursuant to R.C. 2307.382(A)(3), we need not reach the issue whether other subsections of the statute relied upon by plaintiffs are applicable. We are required, however, to determine whether the exercise of jurisdiction over defendant is in accord with due process.

In *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 186–187, 624 N.E.2d 1048, 1053, the Ohio Supreme Court noted the following:

"The United States Supreme Court has held that in order for a state court to subject a foreign corporation to a judgment *in personam*, the corporation must 'have certain minimum contacts with [the state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." * * *' (Citations omitted.) *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102. In formulating this rule, the United States Supreme Court emphasized that the analysis 'cannot simply be mechanical or quantitative,' but rather whether due process is satisfied depends 'upon the quality and nature of the activity.' *Id.* at 319, 66 S.Ct. at 159–160, 90 L.Ed. at 103–104.

"This concept of minimum contacts serves two functions. First, it protects the nonresident defendant 'against the burdens of litigating in a distant or inconvenient forum.' *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498. Second, it ensures that the states do not encroach on each other's sovereign interest. *Id.*

"Under the *International Shoe* doctrine, a nonresident corporation submits to a state's personal jurisdiction when the activities of the company within the state are systematic and continuous. *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103. And while the casual presence of a corporate agent or a single or isolated act is not enough, 'other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit.' *Id.* 'Thus where the defendant "deliberately" has engaged in significant activities within a State * * *, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.' *Burger King Corp.* [*v. Rudzewicz* (1985) ], *supra*, 471 U.S. [462] at 475–476, 105 S.Ct. [2174] at 2184, 85 L.Ed.2d [528] at 543. The Ohio Supreme Court adopted the basic principle of *International Shoe* in *Wainscott v. St. Louis–San Francisco Ry. Co.* (1976), [47 Ohio St.2d 133, 1 O.O.3d 78, 351 N.E.2d 466] *supra*, at syllabus, stating due process is satisfied when 'a foreign corporation has certain minimum contacts with Ohio such that it is fair that a defendant defend a suit brought in Ohio and that substantial justice is done.' "

 Upon review of the materials submitted, we conclude that defendant's contacts were sufficient to satisfy due process requirements. The facts alleged indicate that defendant availed himself of the benefits and protections of the laws of Ohio by entering into negotiations from Votek, Inc.'s Ohio office, executing documents in Ohio relative to the transaction, and directing that payment on the equipment be sent to Ohio. As previously noted, defendant and Millon engaged

in numerous telephone calls regarding the purchase of the Schedule B equipment. While defendant disputes that calls were made from the Dublin, Ohio office of Votek, Inc. regarding the alleged misrepresentations, we are required to construe the facts most favorably to the plaintiffs.

The affidavit of Millon states that, during the negotiations regarding lease arrangements for the Golden Eagle transaction, he had "many telephone conversations with Phee in Dublin, Ohio." Millon averred that, in June 1993, defendant called him from Dublin, Ohio to discuss a line of credit regarding Schedule B. Millon further stated that, "[e]xcept on rare occasions when I was directed to contact Phee in Canada, all of my transactions with Phee were at the Ohio offices where he administered all of Votek, Inc.'s operations except the sales activities." Millon stated that, during the dealings regarding Schedule B, "I made at least ten phone calls regarding that schedule to Bourke[2] in Dublin and was immediately transferred to Phee on their phone system." Defendant's own deposition testimony indicates that if a call was placed to the Dublin, Ohio office and transferred to him, the transfer of the call would indicate he was in the Dublin office at the time. Defendant also acknowledged that he traveled to Ohio at least once a quarter to Votek, Inc.'s office.

In addition to the telephone conversations at issue, defendant directed Millon to send documents pertaining to the transaction to Ohio. Further, the record indicates that, relative to the Schedule B equipment, U.C.C. documents were filed with the Ohio Secretary of State and defendant's signature appears on those U.C.C. filings. Defendant also directed that Millon forward $58,000 to Ohio as payment for the Schedule B equipment. Thus, the record indicates that defendant purposely directed activities toward the forum. Furthermore, as discussed previously, the claims asserted by plaintiffs arise out of defendant's forum-related activities.

We also conclude that the contacts by defendant with Millon were substantial enough that defendant should have reasonably anticipated being haled into court in Ohio. Construing the allegations of plaintiffs' complaint and the affidavit of Millon in a light most favorable to plaintiffs, defendant made false representations to Millon during a series of telephone conversations with the purpose of inducing Heritage to enter into the agreement at issue and send payment for nonexistent equipment. The affidavit of Millon states that he made it clear to defendant that Heritage's primary loaning bank imposed restrictions requiring Heritage to do business only with United States companies. The defendant directed Millon to send a check for $58,000 to Votek, Inc.'s Ohio office. As

---

**2.** The record indicates that Amy Bourke was an employee of Votek, Inc. at the company's Dublin, Ohio office.

previously noted, the affidavit of Millon indicates that he spoke on the telephone with defendant on at least ten occasions concerning the Schedule B equipment while defendant was at the Ohio office. In light of the number of calls, and the fact that defendant knew that Millon could obtain bank lending only by doing business with a United States company (*i.e.*, Votek, Inc., rather than Votek, Ltd., the parent Canadian company), defendant could reasonably expect to be sued in Ohio if plaintiffs were injured by the alleged fraudulent misrepresentations.

We further find that the assertion of jurisdiction over defendant is reasonable. The Ohio Supreme Court has recognized that " 'because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.' " *U.S. Sprint, supra*, 68 Ohio St.3d at 187, 624 N.E.2d at 1054, quoting *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 541. Further, " '[a] state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory * * * because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection * * *.' " *Keeton v. Hustler Magazine, Inc.* (1984), 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790, 798. Ohio has an obvious interest in exercising jurisdiction over torts committed within its territory.

Finally, defendant claims that personal jurisdiction cannot be exercised against him based upon alleged acts he performed as an officer of Votek. In defendant's motion to dismiss before the trial court, defendant asserted that the corporate shield doctrine precluded the court from exercising personal jurisdiction over him for actions taken by him on behalf of the corporation. As previously noted, the trial court agreed with defendant's contention in granting the motion to dismiss.

██ In general, the fiduciary shield doctrine provides that corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction of a court for such acts. *Natl. Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.* (W.D.Pa.1992), 785 F.Supp. 1186, 1191. However, there are exceptions to the doctrine, and "a corporate agent may be held personally liable for torts committed in the corporate capacity." *Id.*

██ Ohio law recognizes that corporate officers may be liable in their individual capacity for acts of fraud. In *Centennial Ins. Co. v. Tanny Internatl.* (1975), 46 Ohio App.2d 137, 141, 75 O.O.2d 115, 118, 346 N.E.2d 330, 334, the court held:

" Directors and corporate officers generally may be personally liable for fraud even though the corporation may be liable also. * * * To fasten personal liability upon a corporate officer for fraud, it must be shown that he knew the

statement was false, that he intended it to be acted upon by the parties seeking redress, and that it was acted upon to the injury of the party." See, also, *Lepera v. Fuson* (1992), 83 Ohio App.3d 17, 23, 613 N.E.2d 1060 ("A tort victim is entitled to recover from the agent as well as the principal for fraudulent misstatements made by the agent in the course of his employment."), citing *Stuart v. Natl. Indemn. Co.* (1982), 7 Ohio App.3d 63, 7 OBR 76, 454 N.E.2d 158.

In the instant case, plaintiffs' complaint and the affidavit of Millon set forth allegations that defendant made knowingly false representations to plaintiffs regarding Votek's alleged purchase and delivery of the Schedule B equipment and that defendant intended for plaintiffs to rely and act upon such information to their injury. Construing the allegations in a light most favorable to the plaintiff, if plaintiffs' injury resulted from fraudulent misrepresentation on the part of defendant, made with appreciation that he was committing a tortious act, then defendant could be held personally liable for such action and the corporate shield doctrine would not apply to preclude liability. Accordingly, we find that the trial court erred in determining that plaintiffs failed to set forth a factual basis for permitting the court to assert personal jurisdiction over defendant in his individual capacity.

We make no determination regarding the possible merits of plaintiffs' claims against defendant. Rather, our determination is limited to the finding that, viewing the pleadings and affidavits in a light most favorable to plaintiffs, which we must, plaintiffs have made a prima facie showing of personal jurisdiction to overcome the motion to dismiss.

Based upon the foregoing, the trial court erred in granting defendant's motion to dismiss on jurisdictional grounds. Accordingly, plaintiffs' single assignment of error is sustained, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and CLOSE, JJ., concur.