OPINION
Edward P. Hancock, dba Hancock Enterprises, Inc., appeals a decision of the Franklin County Court of Common Pleas. The trial court granted a motion for summary judgment in favor of defendants-appellees Joseph O. Longo, Joseph A. Longo, and Christina Longo Greci. We affirm.
Longo's Franchise Corporation ("Longo's Corp."), was a corporation created for the purpose of franchising Longo's restaurants ("Longo's"). Joseph O. Longo was the president, Joseph A. Longo was the vice president, and Christina Longo Greci was the secretary and treasurer of Longo's Corp. Appellees were also members of the board of directors of Longo's Corp. Additionally, Joseph O. Longo is the father of Joseph A. Longo and Christina Longo Greci. Eric Schmidt and Michael Panebianco were non-salary employees of Longo's Corp. "acting as outside sales staff to promote and sell individual Franchises and Master Franchises" for Longo's Corp.
In November 1993, appellant met with Schmidt and Panebianco concerning franchising Longo's restaurants in Franklin County. Appellant stated that Schmidt and Panebianco "told me about their concept Pizza, chicken, pasta, subs salads and a full menu all delivered." Appellant also stated that Panebianco "told me they currently had 20 stores opening or operating in Cleveland." Appellant filled out an application to be a franchisee for Longo's Corp. for the Columbus area and appellant's attorney and Panebianco negotiated a franchisee contract. On December 8, 1993, appellant signed a twenty page "Master Franchise Agreement" with Longo's Corp. The agreement outlined the duties of appellant and Longo's Corp. and included a clause that the agreement constituted "the entire, full and complete Agreement" between appellant and Longo's Corp. As part of the agreement, appellant paid Longo's Corp. a $40,000 franchise fee. Appellant was also given "the right to establish and maintain independent Franchise units" within central and southwestern Ohio, and "the first right of refusal for the establishment of new Master Franchisee territories in the State of West Virginia." The agreement entitled appellant to a refund of $35,000 of the franchise fee if he decided to terminate the contract less than a year after it was signed and a refund of $30,000 if the contract was terminated within two years.
Appellant contends that many of the promises made to him by Longo's Corp. employees were not kept during the eighteen months after he had signed the agreement. In 1995 Longo's Corp. announced that it was dropping chicken from its menu and logo. Thereafter, appellant terminated his contract with Longo's Corp. prior to any Longo's restaurants being opened in Columbus. On March 15, 1996, Longo's Corp. filed for bankruptcy with the United States Bankruptcy Court for the Northern District of Ohio.
On June 21, 1996, appellant filed a complaint against appellees in the Franklin County Court of Common Pleas.[1] In the complaint, appellant alleged that appellees:
 * * * fraudulently induced [appellant] to enter into the agreement and fraudulently induced [appellant] to continue his efforts on behalf of Longo's Franchise Corporation under the terms of the franchise agreement by intentionally making false representations to [appellant] upon which he has relied to his detriment * * *.
In support of his claim that appellees fraudulently induced appellant to enter into the agreement, he stated eight misrepresentations appellees allegedly made causing appellant to be damaged:
 a. [Appellees] falsely represented that Longo's was one of the hottest and fastest growing franchises in America.
 b. [Appellees] falsely represented that there were at least twenty company and franchise stores in existence at that time.
 c. [Appellees] falsely represented that they had done extensive marketing studies of Columbus, and it was a perfect area to grow franchises.
 d. [Appellees] falsely represented that Longo's franchises were twice as profitable as other major pizza chain franchises.
 e. [Appellees] falsely represented that they would assist [appellant] in all phases of the first three franchise sales.
 f. [Appellees] falsely represented that the [appellant] would be provided an initial two-day training program with more to follow.
 g. [Appellees] falsely represented that [appellant] could withdraw from the franchise agreement at any time and get all or nearly all of his franchise fee investment back.
 h. [Appellees] falsely represented that Longo's franchised stores would sell chicken.
In support of his claim that appellees fraudulently induced him to continue his efforts on behalf of Longo's Corp. under the terms of the franchise agreement, he stated thirteen other misrepresentations appellees allegedly made causing him to be damaged:
 a. [Appellees] falsely represented that advertising efforts made by [appellant] would generate a specified number of potential franchisees of which a specified number would acquire Longo's franchises.
 b. [Appellees] falsely represented the manner in which prospective franchisees would be handled by [appellant] and made false representations to prospective franchisees regarding their potential income and their prospects for opening stores.
 c. [Appellees] falsely represented to the [appellant] their alleged efforts to develop advertising for Longo's franchises.
 d. [Appellees] falsely represented to the [appellant] the availability of space for installation of Longo's stores in the Columbus area and that negotiations were under way to secure space to set up either company owned or franchised stores.
 e. [Appellees] falsely represented to the [appellant] that other master franchisees were successfully selling franchises and opening new stores.
 f. [Appellees] falsely represented to the [appellant] their intention of opening one or more company-owned stores in the Columbus area as an incentive for the development of franchised stores.
 g. [Appellees] falsely represented to the [appellant] their intention to open a store with [appellant] as an incentive to market franchised stores in the Columbus area.
 h. [Appellees] falsely represented to the [appellant] that he should stay with Longo's until the end of 1995, and if he was not satisfied, they would refund his money.
 i. [Appellees] falsely represented to the [appellant] that they would make aggressive and new marketing efforts to sell franchises to assist master franchisees in marketing Longo's franchises.
 j. [Appellees] falsely represented to the [appellant] that they would put together a financing package to assist in the marketing of Longo's franchises.
 k. [Appellees] falsely represented to the [appellant] that a detailed cost breakdown for a new franchise store would be provided to master franchisees.
 l. [Appellees] falsely represented to the [appellant] that a detailed store operating manual would be provided to master franchisees.
 m. [Appellees] dropped chicken from Longo's menu and substantially and materially altered the Longo's trademark which were unique characteristics of Longo's that induced [appellant] to enter into the franchise agreement and the lack of which substantially impaired the marketing of franchises.
Appellant also stated in his complaint that appellees "were at all pertinent times stated herein officers, employees or agents of Longo's Franchise Corporation."
On February 17, 1998, appellees filed a motion for summary judgment. They contended that appellant's agreement was with Longo's Franchise Corp. and that appellant was barred from seeking personal liability from appellees under either "contract or `piercing corporate veil' arguments against corporate officers and employers." Appellant filed a memorandum contra to appellees' motion for summary judgment. In support of his arguments in his memorandum contra, appellant attached his affidavit, a check register for Longo's Corp., and copies of complaints filed by other franchisees against Longo's Corp.
On July 24, 1998, the trial court sustained appellees' motion for summary judgment. The court found that appellees "did not contract in a personal capacity with [appellant] and that [appellees] were acting within the scope of their employment when any representations may have been made." The court also examined whether appellant presented sufficient evidence to show that appellees "were the `alter-ego' of Longo's, hence they should be held liable." The court held that appellees had met their Civ.R. 56(C) burden in establishing that their dealings with appellant were only in their representative capacity for Longo's Franchise Corp. and not as individuals. The court further held that appellant failed to produce specific facts demonstrating an issue for trial. The court specifically found that appellant could not show that appellees were liable because appellant failed to produce sufficient evidence to prove that they had committed fraud. Appellant appeals this decision and presents the following assignment of error:
 The Trial Court Erred in Sustaining Defendant-Appellee's [sic] Motion for Summary Judgment.
Appellant argues in his assignment of error that he presented sufficient evidence to show that appellees were personally liable for their actions. Appellant contends that the trial court erred in determining that he had failed to meet his burden of establishing the elements of fraud and to establish grounds to find appellees liable by "Piercing The Corporate Veil of Longo's."
Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Lewis v. Wendy's Internatl., Inc. (Sep. 30, 1999), Franklin App. No. 98AP-1505, unreported (1999 Opinions 4250, 4252).
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. The Buschman Co. (1998),127 Ohio App.3d 561, 566.
A party seeking summary judgment on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. In the present case, appellees moved for summary judgment claiming that appellant's agreement was with Longo's Corp. and not with appellees. Appellees also claimed that they could not be held personally liable for appellant entering into a contract with Longo's Corp. because their actions were within the course and scope of their employment. In support of their motion for summary judgment, appellees attached a copy of the agreement between Longo's Corp. and appellant. Appellees also included affidavits in which they stated that they did not enter into a contract with appellant and that they "participated in collective discussions with other officers and directors before corporate decisions were finalized and action taken by" Longo's Corp. Additionally, appellant acknowledged in his complaint that the agreement he entered into was with Longo's Corp. and that appellees "were at all pertinent times stated herein officers, employees or agents of Longo's Franchise Corporation."
A corporation is an artificial person, created by the General Assembly and deriving its power, authority and capacity from the statutes. Worthington City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision (1999), 85 Ohio St.3d 156, 160. A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation. Belvedere Condominium Unit Owners' Assoc. v. R.E. Roark Cos., Inc. (1993) 67 Ohio St.3d 274, 287. "The very existence of the corporate form rests on the principle that corporate shareholders, officers, and directors are not personally liable for corporate debts." Barbee Concrete Const. v. Bachinski Bldrs., Inc. (Nov. 20, 1997), Franklin App. No. 97APE03-397, unreported (1997 Opinions 4836, 4839). "An officer of a corporation is not individually liable for acts taken in the scope of his corporate powers." H.E. Reichle, Inc. v. Murphy (Aug. 7, 1998), Lucas App. No. L-96-067, unreported, following Young v. Featherstone Motors, Inc. (1954), 97 Ohio App. 158, 172.
After having reviewed appellees' motion for summary judgment, we find that appellees met their burden in establishing that they were not liable to appellant for his contractual relationship with Longo's Corp. Appellees presented sufficient evidence showing that: (1) a contractual relationship did not exist between appellant and appellees, and (2) appellees were acting within the scope of their corporate powers.
Once a party moving for summary judgment has met his or her burden, unless the nonmoving party sets forth specific facts showing that there is a genuine issue for trial pursuant to Civ.R. 56(E), summary judgment should be granted in favor of the moving party. Dresher, at 293. In the present case, appellant opposed appellees' motion by claiming that his affidavit and documentary exhibits "clearly sets forth a prima facie case for each of the elements of fraud." Appellant also claimed that his affidavit "provides a detailed accounting of numerous verbal and written misrepresentations and false statements made to [appellant] by [appellees] including their admitted agents and employees."
We have recently stated:
 In general, the fiduciary shield doctrine provides that corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction of a court for such acts. However, there are exceptions to the doctrine, and "a corporate agent may be held personally liable for torts committed in the corporate capacity."
 Ohio law recognizes that corporate officers may be liable in their individual capacity for acts of fraud. "Directors and corporate officers generally may be personally liable for fraud even though the corporation may be liable also. * * * To fasten personal liability upon a corporate officer for fraud, it must be shown that he knew the statement was false, that he intended it to be acted upon by the parties seeking redress, and that it was acted upon to the injury of the party." * * *
Heritage Funding Leasing Co. v. Phee (1997), 120 Ohio App.3d 422,430-431. (Citations omitted). When attempting to prove fraud, "[a] mere conclusory statement that someone's testimony is knowingly false does not serve as evidence of the falsity of the testimony" and a "party who opposes a motion for summary judgment may not rest upon mere allegations." Becker v. Becker (Aug. 11, 1997), Clermont App. No. CA97-01-001, unreported, dismissed (1997), 80 Ohio St.3d 1466.
A review of appellant's memorandum opposing appellees' motion for summary judgment shows that appellant failed to present sufficient evidence to create a genuine issue of material fact concerning whether appellees committed fraud. Appellant did not present any evidence showing that appellees' representations were false, but instead simply rested upon his "mere allegations" in his affidavit that appellees' representations were false. For example, appellant claims that before he signed the agreement, appellees falsely represented that Longo's was one of the hottest and fastest growing franchises in America. However, appellant provides no evidence of Longo's growth in comparison to other franchises in America. Appellant also claims that appellees falsely represented that there were at least twenty Longo's stores. However, appellant provides no evidence of the number of Longo's Corp. franchise stores.
Additionally, appellant also provides no evidence that appellees failed to do market studies of Columbus. Appellant provides no evidence concerning the profitability of Longo's franchises in comparison with other major pizza chain franchises. Appellant further provides no evidence showing how dropping chicken from Longo's menu "substantially impaired the marketing of the franchises." In order to sustain his allegations that appellee committed fraud through false representations, appellant was required to show that the statements were false. A review of appellant's memorandum contra shows that he failed to do this.
Further, a portion of appellant's complaint is based upon claims that appellees falsely represented future occurrences. For example, appellant in his complaint claimed that appellees falsely represented: (1) that appellees would assist appellant in all phases of the first three franchise sales; (2) that appellant would be provided an initial two-day training program with more to follow; (3) that Longo's franchised stores would sell chicken; (4) that appellant's advertising efforts would generate a specific number of potential franchisees of which a specified number would acquire Longo's franchises; (5) the manner in which prospective franchisees would be handled by appellant; (6) to prospective franchisees regarding their potential income and their prospects for opening stores; (7) their intention of opening one or more company-owned stores in the Columbus area; (8) that appellees would make aggressive new marketing efforts to sell franchises to assist master franchisees in marketing Longo's franchises; (9) that appellees would put together a financing package to assist in the marketing of Longo's franchises; (10) that a detailed cost breakdown for a new franchise store would be provided to master franchisees; and (11) that a detailed store operating manual would be provided to master franchisees.
However, "a claim of `fraud cannot be predicated upon promises or representations relating to future actions or conduct.' Representations concerning what will occur in the future are considered to be predictions and not fraudulent misrepresentations." Assoc. for Responsible Development v. Fieldstone Ltd. Partnership (Nov. 13, 1998), Montgomery App. No. 16994, following Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,742, and Tibbs v. National Homes Constr. Corp. (1977),52 Ohio App.2d 281, 287 (citations omitted). The exception to this rule is when the person:
 * * * who makes his promise of future action, occurrence, or conduct, and who at the time he makes it, has no intention of keeping his promise. In such case, the requisite misrepresentation of an existing fact is said to be found in the lie as to his existing mental attitude and present intent.
Tibbs, at 287 (emphasis sic). A review of appellant's memorandum shows that he failed to provide any evidence showing that appellees had no intention of keeping their promises.
We also note that appellant's complaint did not comply with Civ.R. 9(B) which states in part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."
 "The `circumstances constituting fraud' include the time, place and content of the false representation; the fact represented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud."
 The purpose of this requirement is to give the defendant sufficient notice of that of which the plaintiff complains, so that an effective response and defense may be prepared.
State Sav. Bank v. Gunther (1998), 127 Ohio App.3d 338, 345, quoting Aluminum Line Products Co. v. Brad Smith Roofing Co., Inc. (1996), 109 Ohio App.3d 246, 259. In his complaint, appellant did not identify any of the individuals giving the alleged false representation. This fact was particularly important in the present case since appellant is attempting to hold appellees individually liable for fraudulent acts, and not collectively liable.
Further, we note that a review of appellant's complaint in conjunction with his affidavit also shows that most of the alleged false representations were made by Panebianco and Schmidt, who are not parties to the present case. Appellant provides no evidence that Panebianco and Schmidt made the alleged false representations at the request of appellees, and appellant fails to provide an explanation as to why appellees should be held individually liable for Panebianco's and Schmidt's alleged misrepresentations.
Accordingly, after having reviewed the complete record, we find that the trial court did not err in sustaining appellees' motion for summary judgment. Appellant failed to present sufficient evidence to show that appellees committed fraud and that they may be held personally liable for the acts committed in their corporate capacity listed in appellant's complaint. Appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS, P.J., and BOWMAN, J.
[1] Michael Panebianco and Eric Schmidt were listed as defendants in appellant's complaint. However, the trial court dismissed appellant's complaint against them without prejudice on September 3, 1998, because service was not made upon them. See Civ.R. 4(E).