**MORGAN ADHESIVES COMPANY, Appellee,**

v.

**SONICOR INSTRUMENT CORPORATION et al., Appellants.**

[Cite as *Morgan Adhesives Co. v. Sonicor Instrument Corp.* (1995), 107 Ohio App.3d 327.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17222.

Decided Nov. 8, 1995.

*Bruce H. Wilson,* for appellee.

*Javitch, Block, Eisen & Rathbone* and *Kenneth B. Baker; Chris T. Nolan,* for appellants.

REECE, Presiding Judge.

Defendant-appellant, Sonicor Instrument Corporation ("Sonicor"), appeals the Summit County Court of Common Pleas' order denying its motion to vacate judgment, or in the alternative, motion for relief from judgment. We affirm.

I

On July 11, 1989, plaintiff-appellee, Morgan Adhesives Company ("Morgan"), purchased an ultrasonic cleaning system, which it received on September 11, 1989. While the cleaning system was manufactured by Sonicor, a New York corporation with its principal place of business in Copiague, New York, it was actually sold to Morgan through distributor Max Daetwyler Corporation ("Daetwyler"), a North Carolina corporation. According to Sonicor, approximately three percent of its products are distributed to Ohio in this fashion.

Morgan encountered several problems with the cleaning system's performance. After repeated unsuccessful repair attempts, Morgan filed suit against Sonicor and Daetwyler on May 24, 1993, alleging negligence, strict liability in tort, and breach of express and implied warranties. On May 25, 1993, a summons was issued with a copy of the complaint via certified mail to Sonicor and Daetwyler. Daetwyler filed its answer to the complaint on July 29, 1993. Sonicor did not answer or respond to the summons. On August 18, 1993, a second summons and complaint was served upon Sonicor, this time via regular mail. Again, no response was received from Sonicor.

On April 10, 1994, based on Sonicor's failure to plead, defend, or otherwise appear as required by the Ohio Rules of Civil Procedure, Morgan moved the trial court for default judgment against Sonicor in the amount of $30,050. On May 16, 1994, the trial court granted Morgan default judgment. In its order, the trial court found "Sonicor was lawfully served with the Complaint * * * and * * * has failed to plead, defend, or otherwise appear."

After the grant of default judgment in Ohio, Morgan brought an action in the Supreme Court of New York, Suffolk County, to enforce the judgment. Upon notice of the New York proceedings, Sonicor, on November 18, 1994, moved to vacate the Ohio default judgment and alternatively moved for relief from judgment. Sonicor argued it was not subject to the jurisdiction of the Ohio trial court because Sonicor lacked minimum contacts with the state. Sonicor alternatively argued for relief from judgment pursuant to Civ.R. 60(B) for want of service of process. Morgan opposed the motion. Sonicor also filed a motion to stay and an answer to the original complaint on November 18, 1994. On March 9, 1995, Sonicor's motion to vacate judgment and for relief from judgment was denied. Sonicor's motion to stay was also denied.

The trial court, in determining that the long-arm statute was satisfied, stated in its order that "Sonicor has purposefully availed itself of the Ohio forum with respect to the defective equipment and warranty at issue." The trial court concluded subsections (1), (2), and (5) of R.C. 2307.382 were satisfied because "Sonicor has transacted business in Ohio, has in fact supplied goods and service

to Ohio, and caused injury within Ohio by breach of warranty." The trial court also stated the acts by Sonicor "have a substantial enough connection with Ohio to make jurisdiction reasonable," concluding the requirements of due process "are more than satisfied."

On appeal, Sonicor raises one assignment of error which essentially contains the following two arguments: (1) the trial court acted contrary to law in denying Sonicor's motion to vacate due to lack of personal jurisdiction; and (2) the trial court abused its discretion in failing to grant relief from judgment pursuant to Civ.R. 60(B).

## II

Generally, a two-step analysis should be followed when determining whether a state court has personal jurisdiction over a foreign corporation. "First, the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction * * *." *U.S. Sprint Communications Co., L.P. v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048, 1051. As such, nonresident corporations must have certain "minimum contacts" with the forum state. *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 287, 629 N.E.2d 28, 30, citing *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Second, once the trial court determines that personal jurisdiction exists, the court must determine "whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." *U.S. Sprint Communications, supra*, 68 Ohio St.3d at 184, 624 N.E.2d at 1051. See, also, *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 76, 559 N.E.2d 477, 480.

R.C. 2307.382 and Civ.R. 4.3(A) are the pertinent governing provisions for the first step in the analysis. R.C. 2307.382, which sets forth the "minimum contacts" required in order to vest long-arm jurisdiction in a trial court over a foreign corporation, provides that:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state;

"(3) Causing tortious injury by an act or omission in this state;

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent

course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

"(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

"(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

"(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

"(8) Having an interest in, using, or possessing real property in this state;

"(9) Contracting to insure any person, property, or risk located within this state at the time of contracting."

In addition Civ.R. 4.3, which is similar to the above, describes the persons subject to long-arm jurisdiction and extraterritorial service of process.[1]

▇▇▇ The trial court found that subsections (1), (2), and (5) of R.C. 2307.382 were satisfied. Pursuant to R.C. 2307.382(A)(1), the "term 'transact' as utilized in the phrase '[t]ransacting any business' encompasses 'to carry on business' and 'to have dealings' and is 'broader * * * than the word "contract." ' " Goldstein v. Christiansen (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544, quoting Kentucky Oaks Mall Co., 53 Ohio St.3d at 75, 559 N.E.2d at 479. Sonicor does not deny that approximately three percent of its products eventually go to Ohio after it places its products in the stream of commerce. Thus, Ohio appears to be a continuous market for the eventual "landing" of Sonicor's products. Furthermore, it is undisputed that the product sold to Morgan contained a manufacturer's guarantee. Sonicor guarantees the equipment "against failures due to defective material and/or workmanship" and states that it "will replace and/or repair any defective parts or defect in workmanship which may appear during normal and proper use of the equipment." Based on this evidence, the trial court concluded that Sonicor had transacted business in Ohio.

---

1. The Ohio Supreme Court found R.C. 2307.382 and Civ.R. 4.3(A) to be coextensive, holding "that the statute and civil rule are consistent and in fact complement each other." Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479.

Due to the above, minimum contacts existed. First, Sonicor has supplied goods and services to Ohio pursuant to R.C. 2307.382(A)(2). By selling a product with a warranty to an Ohio corporation, Sonicor has contracted to supply repair services in Ohio. Second, Sonicor shipped a defective product under warranty into Ohio, causing injury, and activating minimum contacts pursuant to R.C. 2307.382(A)(5). Because a court may exercise personal jurisdiction over a defendant if the defendant is found to fall under any one of the R.C. 2307.382(A) provisions, the trial court properly maintained jurisdiction over Sonicor based on minimum contacts. In light of the above and the *totality of the circumstances,* we hold that Ohio's long-arm statute was satisfied.

After determining that Sonicor's conduct falls within the purview of R.C. 2307.382(A) and Civ.R. 4.3(A), we must next decide whether the assertion of personal jurisdiction by an Ohio court comports with the Due Process Clause of the Fourteenth Amendment. Under this second step in the analysis, "a state court may assert personal jurisdiction over a nonresident defendant if the nonresident possesses certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goldstein,* 70 Ohio St.3d at 237, 638 N.E.2d at 545, citing *Internatl. Shoe.* "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542. The purposeful establishment of minimum-contact standard will be satisfied "when the defendant foreseeably causes injury in the forum State if ' * * *the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Kentucky Oaks Mall,* 53 Ohio St.3d at 77, 559 N.E.2d at 481, quoting *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542.

Sonicor clearly fits the above standard. By admitting that approximately three percent of its manufactured products are eventually distributed to Ohio, two logical conclusions can be reached: (1) It is foreseeable that some of those products may be defective, thus causing injury in Ohio; and (2) Sonicor could reasonably anticipate being haled into court in Ohio because its products are distributed to Ohio under warranty.

Furthermore, the exercise of personal jurisdiction in this case comports with "fair play and substantial justice." Because of the steady flow of products manufactured by Sonicor into Ohio, Ohio courts possess a strong interest in settling the dispute. "The General Assembly, pursuant to R.C. 2307.382(A)(1), intended to provide a forum for Ohio residents. Likewise, ' * * * Ohio has an interest in resolving suits brought by one of its residents and has a substantial interest in seeing that its residents get the benefit of their bargains.' " *Kentucky*

*Oaks Mall,* 53 Ohio St.3d at 78, 559 N.E.2d at 482, quoting *Wright Internatl. Express, Inc. v. Roger Dean Chevrolet, Inc.* (S.D.Ohio 1988), 689 F.Supp. 788, 791.

## III

Sonicor alternatively appeals the decision of the lower court arguing that the court abused its discretion by failing to grant its motion for relief from judgment pursuant to Civ.R. 60(B).

▮▮▮ To prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must establish each of the following three requirements: "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec. v. ARC Industries* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. See, also, *Argo Plastic Products Co. v. Cleveland* (1984), 15 Ohio St.3d 389, 391, 15 OBR 505, 506, 474 N.E.2d 328, 330. The Ohio Supreme Court has stated that the decision whether to grant relief from judgment is based on "the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122, 1123. See, also, *Manson v. Gurney* (1989), 62 Ohio App.3d 290, 293, 575 N.E.2d 492, 494.

▮▮▮ To meet the first requirement, Sonicor must establish a meritorious defense. The "requirement of a meritorious defense is met by the filing of an answer that contains an affirmative defense or facts sufficient to support the claim of a valid defense." *Newark Orthopedics, Inc. v. Brock* (1994), 92 Ohio App.3d 117, 122, 634 N.E.2d 278, 281. A Civ.R. 60(B) motion need not establish that the movant will ultimately prevail on the defense; it only must allege a defense which, if proved, would constitute a partial or complete defense to the claim alleged. *Id.* Sonicor did not file an answer prior to the court's grant of default judgment to Morgan. It was not until after proceedings were filed in New York that Sonicor filed an answer to Morgan's original complaint. However, upon review of the answer filed by Sonicor and the affirmative defenses set forth in it,[2] this court is satisfied that Sonicor possessed a meritorious defense as defined pursuant to the first step of the *GTE* test.

---

2. In its belated answer Sonicor alleges, among others, lack of personal jurisdiction as an affirmative defense.

While the law certainly favors deciding cases on their merits, a court "cannot set aside a default judgment on the sole assertion of a meritorious defense." *Manson, supra,* 62 Ohio App.3d at 293, 575 N.E.2d at 494. Thus, the second step set forth in *GTE* requires Sonicor to demonstrate its entitlement to relief under one of the grounds set forth in Civ.R. 60(B)(1) through (5).

Sonicor contends its failure to timely answer was the result of "mistake, inadvertence, surprise or excusable neglect," pursuant to Civ.R. 60(B)(1). Specifically, Sonicor argues that it was never aware the suit was filed and that it never received proper service. In support of its argument, Sonicor produces a sworn statement of Larry Frankel, the Comptroller of Sonicor. Paragraph 6 of the affidavit states that Frankel has "no recollection, nor does any officer of Sonicor, of receiving certified notice of any litigation against Sonicor in Ohio. Certainly no document was ever served personally on any officer of this corporation."

In response, Morgan makes two arguments. First, Sonicor was served with a summons and copy of the complaint twice. Once via certified mail and once via regular mail. By complying with the Ohio Civil Rules of Procedure on service of process, Morgan argues that a rebuttable presumption of proper service is established pursuant to *Rafalski v. Oates* (1984), 17 Ohio App.3d 65, 17 OBR 120, 477 N.E.2d 1212. Second, Morgan states that Sonicor at the very least had actual notice about the suit from Daetwyler. In support of this argument, Morgan produced discovery responses by Daetwyler wherein Daetwyler said that it communicated with Sonicor about the pending lawsuit. Additionally, in a status conference among the trial judge and counsel for Daetwyler and Morgan, Daetwyler told the parties that it had contacted Sonicor and that Sonicor stated that it was going to ignore the suit.

Upon denying Sonicor's Civ.R. 60(B) motion, the trial court stated:

" * * * service upon defendant Sonicor was appropriate under both O.R.C. Section 2307.38.2 and the Ohio Rules of Civil Procedure 4.3 and 4.6. Furthermore, it is quite obvious to the Court based upon the discovery responses of defendant Daetwyler that Sonicor had actual notice and knowledge of these proceedings, but elected to not participate."

Based on the above facts this court finds that no mistake, inadvertence, or excusable neglect existed. In fact, Sonicor had knowledge of the proceedings and knowledge of the consequences of its failure to participate, but elected not to participate. Sonicor's knowledge of the suit and the impending likelihood of a default judgment amounted to a "conscious decision to ignore the judicial process." *Assaf v. Moneskey* (Nov. 30, 1988), Summit App. No. 13581, unreported, at 5, 1988 WL 131511. Courts will not condone or reward a party's choice to

ignore the judicial process by the grant of relief pursuant to Civ.R. 60(B). See *Manson*, 62 Ohio App.3d at 294, 575 N.E.2d at 494; *Assaf, supra*, at 5–6.

In light of the above, this court determines that the trial court did not abuse its discretion by failing to grant Sonicor's Civ.R. 60(B) motion. Because the second requirement of *GTE* has not been met, the trial court properly denied relief from judgment.

### IV

The assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment accordingly.*

DICKINSON and SLABY, JJ., concur.