[Cite as *MJM Holdings Inc. v. Sims*, 2019-Ohio-514.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MJM HOLDINGS INC.

    Appellant

    v.

DAVID MICHAEL SIMS, et al.

    Defendants

    and

DICKINSON & WHEELOCK PC, et al.

    Appellees

C.A. No.      28952

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      CV-2016-12-5229

DECISION AND JOURNAL ENTRY

Dated: February 13, 2019

CALLAHAN, Judge.

{¶1} Appellant, MJM Holdings Inc. ("MJM"), appeals from the judgment of the Summit County Common Pleas Court in favor of Appellees, Thomas Dickinson and Dickinson & Wheelock PC (collectively "the Dickinson defendants"). For the reasons set forth below, this Court reverses.

I.

{¶2} On April 24, 2014, MJM, an Ohio corporation, entered into a written loan agreement and promissory note with David Sims,[1] a citizen of Nevada who had business

---

[1] While Mr. Sims is a defendant in the underlying case, he is not a party to this appeal.

interests in Texas. Thomas Dickinson, an attorney licensed in Texas ("attorney Dickinson"), and Dickinson & Wheelock PC, a law firm based in Texas ("the Dickinson law firm"), participated in the drafting and negotiating of various loan documents on behalf of Mr. Sims.

{¶3} MJM loaned Mr. Sims $275,000, plus a $5,000 loan processing fee. To secure the loan, Mr. Sims, in his capacity as an authorized representative of Platinum Premier Corporation Limited ("Platinum Premier Corp."), a Gibraltar entity, executed a security agreement in which Platinum Premier Corp. provided MJM with a first priority security interest in a yacht. Mr. Sims also provided MJM with a Platinum Premier Corporation Limited Officers' Certificate which certified that Mr. Sims was the president and chief executive officer of Platinum Premier Corp. Before entering into this loan, MJM requested, and its counsel received, an opinion letter from the Dickinson defendants, as counsel for Platinum Premier Corp., confirming the validity of the lien on the yacht. Mr. Sims subsequently defaulted on the note, and MJM sued Mr. Sims for breach of contract, fraud, and rescission and the Dickinson defendants for fraud/collusion and negligent misrepresentation.

{¶4} After filing an answer, the Dickinson defendants moved to dismiss, or alternatively, for judgment on the pleadings, on three bases: 1) the trial court lacked personal jurisdiction over the Dickinson defendants, 2) MJM failed to state a claim against the Dickinson defendants upon which relief could be granted, and 3) MJM failed to join necessary parties. Once the briefs were submitted, the trial court scheduled an evidentiary hearing as to the legal issue of personal jurisdiction. Following the hearing, the trial court dismissed MJM's complaint as to the Dickinson defendants for lack of personal jurisdiction. The trial court certified that there was no just reason to delay an appeal of its order and stayed the remainder of the case.

{¶5}    MJM timely appeals from this judgment entry, asserting one assignment of error. The Dickinson defendants have also filed an assignment of error.

II.

**MJM'S ASSIGNMENT OF ERROR**

THE TRIAL COURT INCORRECTLY GRANTED [THE DICKINSON DEFENDANTS'] MOTION TO DISMISS [MJM'S] COMPLAINT AGAINST THEM FOR LACK OF PERSONAL JURISDICTION.

{¶6}    MJM argues that the trial court erred in dismissing its complaint against the Dickinson defendants for lack of personal jurisdiction.  This Court agrees.

{¶7}    Whether personal jurisdiction exists is a question of law that is reviewed de novo. *Kauffman Racing Equip, L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, ¶ 27. *Accord Goodrich Corp. v. Polyone Corp.*, 9th Dist. Summit No. 27691, 2016-Ohio-1068, ¶ 12.  A de novo review encompasses an independent examination of the trial court's decision without deference to the underlying decision. *Ohio Receivables, L.L.C. v. Landaw,* 9th Dist. Wayne No. 09CA0053, 2010-Ohio-1804, ¶ 6, quoting *State v. Consilio,* 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶8}    This Court applies a two-part inquiry when deciding whether an out-of-state defendant is subject to personal jurisdiction in an Ohio court.  *Goodrich Corp.* at ¶ 13, quoting *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, ¶ 12. "'First, the court must determine whether the defendant's conduct falls within Ohio's long-arm statute or the applicable civil rule. If it does, then the court must consider whether the assertion of jurisdiction over the nonresident defendant would deprive the defendant of due process of law under the Fourteenth Amendment to the United States Constitution.'" (Internal citations omitted sic.). *Id.*

{**¶9**}   The burden of proving that personal jurisdiction exists rests with the plaintiff. *ComDoc v. Advance Print Copy Ship Ctr.*, 9th Dist. Summit No. 24212, 2009-Ohio-2998, ¶ 3. Upon the filing of a motion to dismiss for lack of personal jurisdiction, the trial court has the discretion to rule upon the motion with or without a hearing. *See Giachetti v. Holmes*, 14 Ohio App.3d 306, 307 (8th Dist.1984).   When the court decides the issue of personal jurisdiction without a hearing, the factual allegations relevant to personal jurisdiction are construed in favor of the plaintiff and the plaintiff must only present a prima facie showing of personal jurisdiction. *See Herbruck v. LaJolla Capital*, 9th Dist. Summit No. 19586, 2000 WL 1420282, *2 (Sept. 27, 2000).   However, since the issue of jurisdiction is often not apparent from the face of the pleadings, the trial court may conduct an evidentiary hearing.  *See Sherry v. Geissler U. Pehr GmbH*, 100 Ohio App.3d 67, 72 (8th Dist.1995).   When an evidentiary hearing is held, the plaintiff must prove by a preponderance of the evidence that jurisdiction exists. *Id.*

**Ohio's Long-Arm Statute and Civ.R. 4.3**

{**¶10**}  Ohio's long-arm statute sets forth nine specific acts by a defendant which give rise to personal jurisdiction.   R.C. 2307.382(A). Civ.R. 4.3(A), which parallels the long-arm statute, is a complementary rule governing service of process upon a person who is outside of Ohio.  *See Kauffman Racing Equip., L.L.C.,* 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 35.

{**¶11**}  In support of personal jurisdiction, MJM relies upon R.C. 2307.382(A)(1) and (6), which provide as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> * * *

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

Additionally, MJM cites to Civ.R. 4.3(A)(1) and (9), the corresponding rules for service of process upon nonresidents, which state:

(A) * * * Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state;

* * *

(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state[.]

MJM asserts there is personal jurisdiction over the Dickinson defendants because MJM's claims for fraud/collusion and negligent misrepresentation against the Dickinson defendants "grow directly out of the letter Mr. Dickinson sent to MJM Holdings in Ohio and the transactions negotiated by [the Dickinson defendants]."

**R.C. 2307.382(A)(1) / Civ.R. 4.3(A)(1)**

{¶12}   The Ohio Supreme Court has recognized "'transacting any business'" as being "a broad statement of jurisdiction" and questions concerning the application of R.C. 2307.382(A)(1) are resolved upon "'highly particularized fact situations, thus rendering any generalization unwarranted.'" *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (1994), quoting 22 Ohio Jurisprudence 3d, Courts and Judges, Section 280

(1980). Thus, a court must determine, case-by-case, whether a nonresident is transacting business in the state of Ohio. *U.S. Sprint* at 185. *Accord Herbruck*, 2000 WL 1420282, at *2.

{¶13} In light of the broad nature of the statutory phrase "transacting any business," this Court has applied the definition adopted by the Ohio Supreme Court. *See Morgan Adhesives Co. v. Sonicor Instrument Corp.*, 107 Ohio App.3d 327, 332 (9th Dist.1995), citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (1994); *Herbruck* at *2. In *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990), the Ohio Supreme Court determined that the word "'[t]ransact'" in the context of the long-arm statute means "'to prosecute negotiations; to carry on business; to have dealings'" and it "'is a broader term than the word "contract." '" (Emphasis deleted.) *Id.*, quoting Black's Law Dictionary 1341 (5th Ed.1979).

{¶14} Transacting business in Ohio does not require the nonresident party to have a physical presence in Ohio. *See Kentucky Oaks Mall Co.* at 76. One factor that may be considered, but is not determinative as to transacting business, is whether the nonresident initiated the business dealing. *Barnabus Consulting Ltd. v. Riverside Health Sys., Inc.*, 10th Dist. Franklin No. 07AP-1014, 2008-Ohio-3287, ¶ 15. Another factor relevant to transacting business is whether the parties conducted their negotiations and communications in Ohio or based upon terms affecting Ohio. *Id. See Diversa, Inc. v. Pennsylvania Substance Abuse Information Ctr.*, 11th Dist. Portage No. 95-P-0028, 1996 WL 200629, *4 (Mar. 29, 1996) (finding that a nonresident transacted business in Ohio for numerous reasons, including that "the negotiations were carried on by mail and telephone with [the resident] at its office in Kent, Ohio [and] the signed contracts were sent to [the resident] in Ohio."). "If the parties negotiated in Ohio with provisions affecting Ohio, the non[]resident transacted business in Ohio, provided there is 'some continuing obligation that connects the non[]resident defendant to the state or some terms of the

agreement that affect the state.'" *Russian Collections, Ltd. v. Melamid*, S.D.Ohio No. 2:09-cv-300, 2009 WL 4016493, *3 (Nov. 18, 2009), quoting *Shaker Constr. Group., LLC v. Schilling*, S.D.Ohio No. 1:08cv279, 2008 WL 4346777, *3 (Sept. 18, 2008).

{¶15} MJM argues that the Dickinson defendants transacted business in Ohio by sending the opinion letter containing false statements to MJM in Ohio, by communicating via email with MJM and its counsel in Ohio, and by negotiating the terms of several agreements governed by Ohio law involving MJM, Mr. Sims, and Platinum Premier Corp. The Dickinson defendants respond that they did not conduct any business in Ohio because they only provided legal services to Mr. Sims and Platinum Premier Corp. in Texas based upon Texas law and the only business relationship was between MJM and Mr. Sims/Platinum Premier Corp.

{¶16} The complaint alleged that the Dickinson defendants provided an opinion letter to MJM which contained the following false statements: 1) the Dickinson defendants represented Platinum Premier Corp. with respect to the preparation of the security agreement between Platinum Premier Corp. and MJM, 2) the security agreement created a valid and binding obligation upon Platinum Premier Corp., and 3) the security agreement created a valid first priority security interest in the yacht in favor of MJM. The April 24, 2014 opinion letter, attached as an exhibit to the complaint and admitted into evidence at the evidentiary hearing, reflects each of these statements.

{¶17} The opinion letter also contains statements that it was prepared at the request of and for the sole benefit of MJM in relation to the loan transaction. Further, the opinion letter is on letterhead from the Dickinson law firm in Texas and is addressed to MJM in Ohio.

{¶18} At the evidentiary hearing, MJM also admitted into evidence two sets of discovery responses: attorney Dickinson's amended responses and objections and the Dickinson

law firm's responses and objections to MJM's first set of discovery. In these discovery responses, attorney Dickinson admitted that he sent the opinion letter via email to MJM's counsel, and the Dickinson defendants admitted that they had knowledge that MJM's counsel was located in Ohio.

{¶19} The discovery responses contained copies of multiple emails between attorney Dickinson and MJM's counsel. The emails reflect attorney Dickinson was engaged with MJM's counsel in drafting and revising the various loan documents and the opinion letter. The opinion letter specifies that the Dickinson defendants "participated in the preparation and negotiation of the [s]ecurity [a]greement and the other Loan Documents" identified as the loan agreement and the promissory note. There is also an email from attorney Dickinson forwarding the executed agreements to MJM's counsel in Ohio.

{¶20} Additionally, there were emails from attorney Dickinson to MJM's counsel advising that it would be necessary to use the yacht, and not the oil field, as the collateral in the security agreement. Attorney Dickinson indicated in emails to MJM's counsel that he "believe[d] the solution [was] to accept a lien on [the yacht]" as opposed to the oil field because Mr. Sims "[did] not own [the oil field] interests personally." Additionally, attorney Dickinson stated that the $275,000 lien on the yacht "would be a first lien" and the lien would be "seriously over-secured" because the yacht was "worth $4 to $5 million." Attorney Dickinson represented in the email that based upon his experience, "[t]he perfection process in Gibraltar is not complex[,]" as he "just went through the process of getting a lien on [the yacht] (securing a $3 million dollar note) released last year."

{¶21} Also attached to the complaint were copies of the loan agreement, the cognovit note, and the security agreement. Each of these documents contained language that Ohio law

would govern the documents. Further, the loan agreement indicated to whom any notices under that agreement would be sent. On behalf of Mr. Sims, both he and his counsel, the Dickinson defendants, were listed to receive such notices.

{¶22} Lastly, the complaint alleged that the Dickinson defendants agreed to record the security agreement, but had no intention of doing so. In the discovery responses, there is an email dated ten months after the loan documents were executed from another attorney at the Dickinson law firm to MJM's counsel explaining that the mortgage on the yacht had not been filed and asking to delay filing the same for another 60 days to allow Mr. Sims to come up with the funds to repay the promissory note.

{¶23} While the evidence supports the Dickinson defendants' position that 1) they have no physical presence in Ohio, 2) they did not represent MJM, 3) the underlying loan transaction was between Mr. Sims and MJM, and 4) it was MJM who requested the opinion letter, there nonetheless was evidence that the Dickinson defendants transacted business in Ohio. For instance, the Dickinson defendants communicated by email with MJM's counsel, wherein they conducted negotiations, drafted and revised the agreements and the opinion letter, and forwarded the executed agreements and opinion letter to Ohio. *See Diversa, Inc.*, 1996 WL 200629, at *4. Also, the agreements were all based upon Ohio law, which affected the forum state, and the Dickinson Defendants had continuing duties following the execution of the agreements which connected them to Ohio. *See Russian Collections, Ltd.*, 2009 WL 4016493, at *3. Further, it was alleged that the opinion letter contained false statements relative to the validity of the yacht lien. *See Goldstein*, 70 Ohio St.3d at 237 ("[A]lleged dissemination of misleading financial information to Ohio investors" by a Florida accountant and accounting firm supported finding of transacting business in Ohio.).

**{¶24}** The Dickinson defendants also argue that the complaint failed to allege that they were transacting business in Ohio. Because there was an evidentiary hearing held in this matter, the evidence was not limited to the complaint and its exhibits. Also before the trial court were the three exhibits admitted into evidence by MJM at the hearing which contained evidence of the Dickinson defendants transacting business in Ohio.

**{¶25}** Based upon a review of all of the evidence outlined above, and the Ohio Supreme Court's broad interpretation of the phrase "transacting any business" in Ohio's long-arm statute, this Court concludes that the Dickinson defendants did transact business in Ohio.

### R.C. 2307.382(A)(6) / Civ.R. 4.3(A)(9)

**{¶26}** "'Subsection (A)(6) applies when an out-of-state defendant, acting directly or through an agent, causes a tortious injury in Ohio by an act committed outside the state, provided that (1) the out-of-state act was committed with the purpose of inflicting an injury and (2) the injury was reasonably expected to occur.'" *Odom Industries, Inc. v. Diversified Metal Prods., Inc.*, S.D.Ohio No. 1:12-CV-309, 2012 WL 4364299, \*12 (Sept. 24, 2012), quoting *Coleman v. Parra,* 163 F.Supp.2d 876, 889 (S.D.Ohio 2000). Courts in Ohio have found "fraudulent communications or misrepresentations directed at Ohio residents satisfy [R.C.] 2307.382(A)(6)'s requirements." *Schneider v. Hardesty*, 669 F.3d 693, 700-701 (6th Cir.2012), citing to *Kauffman Racing Equip., L.L.C.,* 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 44 and *Herbruck*, 2000 WL 1420282, at \*3. This includes letters and emails sent by an out-of-state attorney to a resident of Ohio that contained "'false, deceptive, or misleading' representations in violation of [the Fair Debt Collection Practices Act.]'" *Vlach v. Yaple*, 670 F.Supp.2d 644, 645-646, 648 (N.D.Ohio 2009).

{¶27} The complaint alleged that the Dickinson defendants made two statements in the opinion letter that "they knew [were] not true[:]" 1) the Dickinson defendants acted as counsel for Platinum Premier Corp. in relation to the security agreement, and 2) the security agreement created a valid security interest in the yacht. The opinion letter was on the Dickinson law firm's letterhead, which reflected a Texas address. Also, the opinion letter was signed by attorney Dickinson, who is an attorney licensed in Texas. With respect to tortious injury, MJM further alleged that MJM relied upon the false representations in the opinion letter and suffered actual damages in the amount of $313,000, plus interest, court costs, and attorney fees.

{¶28} In support of the elements of injurious purpose and reasonable expectation that someone would be injured in Ohio, MJM asserted that the Dickinson defendants "intended for MJM [] to rely on [these] false representations" when MJM decided whether to enter into the loan agreement with Mr. Sims. Moreover, the face of the opinion letter supports that MJM's reliance was reasonable because the letter was drafted at MJM's request and for its benefit only. This is also evidence that the alleged false statements were intentionally directed toward MJM. Further, the emails contained in the Dickinson defendants' discovery responses reflected MJM's questions and concerns about the validity of the security interest in the yacht and attorney Dickinson's reassurance on this point.

{¶29} Based upon the foregoing evidence and precedent that "fraudulent communications or misrepresentations directed at Ohio residents satisfy [R.C.] 2307.382(A)(6)'s requirements," this Court concludes that the long-arm statute permits the exercise of personal jurisdiction over the Dickinson defendants. *See Schneider*, 669 F.3d at 700.

**Due Process**

**{¶30}** Having determined that the Dickinson defendants are subject to Ohio's long-arm statute, this Court must now turn to whether the assertion of personal jurisdiction by an Ohio court over the Dickinson defendants comports with the Due Process Clause of the Fourteenth Amendment. *See Kauffman Racing Equip., L.L.C.*, 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 45.

**{¶31}** "[D]ue process is satisfied if the defendant has 'minimum contacts' with the forum state such that the maintenance of the suit does not offend ' "traditional notions of fair play and substantial justice." ' " *Kauffman Racing Equip., L.L.C.* at ¶ 45, quoting *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). Depending upon the nature of the defendant's contacts with the forum state, personal jurisdiction is either general or specific. *Kauffman Racing Equip., L.L.C.* at ¶ 46, citing *Conti v. Pneumatics Prods. Corp.*, 977 F.2d 978, 981 (6th Cir.1992). MJM has only argued specific jurisdiction, thus we will limit our review accordingly.

**{¶32}** "Specific jurisdiction applies when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Kauffman Racing Equip., L.L.C.* at ¶ 47, quoting *Helicopteros Nacionales de Colombia,, S.A. v. Hall*, 466 U.S. 408, 414 (1984), fn. 8. In order to establish that specific jurisdiction is consistent with due process, the Ohio Supreme Court has adopted the following three-part test concerning a defendant's contacts with Ohio:

> "First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Kauffman Racing Equip, LLC* at ¶ 48-50, quoting *S. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). The first two prongs of the test address whether a defendant has "'minimum contacts' with the forum[,]" while the last prong examines whether the "exercise of jurisdiction over the defendant comports with the ideas of 'fair play and substantial justice.'" *State ex rel. DeWine v. 9150 Group, L.P.*, 9th Dist. Summit No. 25939, 2012-Ohio-3339, ¶ 19.

**<u>Purposeful Availment</u>**

**{¶33}** The first prong looks to "whether the defendant purposely availed himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Kauffman Racing Equip., L.L.C.* at ¶ 51. "'Purposeful availment' is present when the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a "substantial connection" with the forum State.'" (Emphasis deleted.) *Id.*, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), quoting *McGee Internatl. Life Ins. Co.*, 355 U.S. 220, 223 (1957). In other words, a defendant purposely avails himself to the forum state when he "'deliberately' has engaged in significant activities within [the forum state]," *Burger King Corp.* at 475-476, quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984), "or has created 'continuing obligations' between himself and residents of the forum." *Burger King Corp.* at 476, quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 648 (1950).

**{¶34}** Purposeful availment considers whether "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Burger King Corp.* at 474, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This analysis is designed to prevent a defendant from being "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," *Burger King Corp.* at 475,

quoting *Keeton* at 774, or as the result "of the 'unilateral activity of another party or a third person.'" *Burger King Corp.* at 475, quoting *Helicopteros Nacionales de Columbia, S.A.* at 417.

**{¶35}** In the case at bar, many of the same facts analyzed with regard to whether the Dickinson defendants were "transacting any business" in Ohio are also relevant to whether the Dickinson defendants purposefully availed themselves of the privilege of acting in Ohio. "Courts must examine the quality and nature of all the contacts a nonresident defendant makes with the forum during the course of the parties' contractual relationship." (Emphasis deleted.) *Barnabus Consulting Ltd.*, 2008-Ohio-3287, at ¶ 22, citing *Burger King Corp.* at 479.

**{¶36}** The Dickinson defendants deliberately conducted significant activities within Ohio by 1) emailing MJM's counsel, 2) drafting and revising various loan agreements, 3) executing and forwarding the loan documents and opinion letter, 4) advising of the necessity to use the yacht, in lieu of an oil field, as the collateral for the loan, 5) providing assurances that a lien on the yacht was possible and the value of the collateral was in excess of the lien, and 6) drafting an opinion letter verifying the validity of the lien. Further, the Dickinson defendants established continuing obligations between themselves and MJM by 1) drafting loan agreements that were governed by Ohio law, 2) agreeing to receive any future notices from MJM under the loan agreement, 3) agreeing to file the yacht mortgage, and 4) negotiating alternatives to filing the yacht mortgage ten months after the loan documents were executed. Viewing all of these facts, MJM has proven by a preponderance of the evidence that the Dickinson defendants purposely availed themselves of the privilege of acting in Ohio.

**{¶37}** While MJM requested the opinion letter and it is the opinion letter that gives rise to MJM's causes of action, prior to the opinion letter being drafted, the Dickinson defendants engaged in email communications, negotiations, and drafting of documents regarding the

collateral that contributed to the opinion letter. In essence, the opinion letter formalized attorney Dickinson's earlier email statements regarding the validity of the lien. Accordingly, the opinion letter was not a result of unilateral conduct of another party, nor was it random, fortuitous, or attenuated. *See Burger King Corp.* at 474-475.

**{¶38}** Assuming that the statements made in the opinion letter sent to MJM's counsel in Ohio were false, as alleged by MJM, the Dickinson defendants should have reasonably anticipated having to defend their actions in Ohio. *See Resolution Trust Corp. v. Farmer*, 836 F.Supp. 1123, 1126-1129 (E.D. Penn.1993) (A Georgia law firm was found to have purposely availed itself to the laws of Pennsylvania when it represented clients in loan transactions and issued opinion letters containing fraudulent misrepresentation on behalf of its clients to financial institutions in Pennsylvania.).

**{¶39}** Accordingly, MJM has demonstrated that the Dickinson defendants purposely availed themselves to the benefits and burdens of Ohio. The first prong of the due process analysis has been satisfied.

### Arising From

**{¶40}** The second prong requires the plaintiff's cause of action arise from the defendant's contacts with Ohio. *Kauffman Racing Equip., L.L.C.*, 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 70. "'If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.'" *Id.*, quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996). The cause of action only needs to "'have a substantial connection with the defendant's in-state activities.'" (Emphasis deleted.) *Kauffman Racing Equip., L.L.C.* at ¶ 70, quoting *Third Natl. Bank in Nashville v.*

*WEDGE Group Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989), quoting *S. Machine Co.*, 401 F.2d at 384, fn. 27.

{¶41} In this case, the Dickinson defendants' activities in Ohio revolved around attorney Dickinson 1) drafting, revising, and forwarding executed loan documents governed by Ohio law, 2) communicating by email with MJM's counsel in Ohio regarding the negotiation of the collateral and the assurances of the priority of the lien on the collateral, and 3) drafting an opinion letter which formalized his email assertions regarding the validity of the lien on the yacht. Because MJM's claims of fraud/collusion and negligent misrepresentation are based upon alleged false statements in the opinion letter regarding the validity of the lien on the yacht and the Dickinson defendants' alleged representation of Platinum Premier Corp. in this transaction, the litigation naturally arises from the Dickinson defendants' Ohio activities. The second prong of the due process analysis has been met.

**Reasonableness**

{¶42} The third prong requires that there be a substantial connection between the forum state and the nonresident defendant's acts or the consequences of the acts in order to make the exercise of jurisdiction over the Dickinson defendants reasonable. *See Kauffman Racing Equip., L.L.C.* at ¶ 71. If the first two prongs are satisfied, there is an inference the third prong is also satisfied. *Id.* at ¶ 71, quoting *CompuServe, Inc.* at 1268, citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988). "Only in unusual circumstances is the third element left unsatisfied, and the burden is on the defendant to show it." *Vlach*, 670 F.Supp.2d at 649, citing *First Natl. Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982).

{¶43} The factors to consider under this prong include: "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining

convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King Corp.*, 471 U.S. at 477, quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

**{¶44}** The Dickinson defendants assert that "[i]t is fundamentally unfair to force them to defend their work in Ohio." While, as residents of Texas, the Dickinson defendants may find litigation in Ohio burdensome, that burden is minimal in light of "modern transportation and communications." *See Clark v. Connor,* 82 Ohio St.3d 309, 315 (1998), citing *Goldstein*, 70 Ohio St.3d at 237.

**{¶45}** Moreover, that minimal burden is outweighed by the interest of both MJM and the state of Ohio in proceeding with litigation and obtaining relief here. A state's interest in resolving suits brought by its residents weighs in favor of a finding of personal jurisdiction. *See Kauffman Racing Equip, L.L.C.*, 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 72. "Ohio, as the forum state herein, has a strong interest in redressing injuries that result from torts committed within Ohio." *Fallang v. Hickey*, 40 Ohio St.3d 106, 108 (1988). Thus, the allegations that the Dickinson defendants sent an opinion letter containing false statements to an Ohio resident and that those false statements caused harm to an Ohio resident make it reasonable for Ohio to exercise jurisdiction over the Dickinson defendants. The third prong of the due process analysis has been fulfilled.

**{¶46}** This Court concludes that MJM established by a preponderance of the evidence that Ohio has personal jurisdiction over the Dickinson defendants. Accordingly, the trial court erred in dismissing the Dickinson defendants for lack of personal jurisdiction. MJM's assignment of error is sustained.

**THE DICKINSON DEFENDANTS' ASSIGNMENT OF ERROR**

EVEN IF THE COURT OF APPEALS COULD FIND THE SUMMIT COUNTY COMMON PLEAS [COURT] HAS PERSONAL JURISDICTION OVER [THE DICKINSON DEFENDANTS], THE TRIAL COURT'S DISMISSAL OF [MJM'S] CLAIMS AGAINST [THE DICKINSON DEFENDANTS] SHOULD STILL BE AFFIRMED BECAUSE [MJM'S] COMPLAINT FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED.

**{¶47}** The Dickinson defendants argue, in the alternative, that the trial court's dismissal of the complaint should be affirmed because MJM failed to state a claim upon which relief can be granted. However, during oral argument, counsel for the Dickinson defendants conceded this issue was not properly before this Court. This Court agrees and declines to address the Dickinson defendants' assignment of error because the trial court did not consider the parties' Civ.R. 12(B)(6) arguments and this Court will not decide this issue in the first instance. *See Fallang* at 109. *Accord Allen v. Bennett*, 9th Dist. Summit Nos. 23570, 23573, 23576, 2007-Ohio-5411, ¶ 21 ("Because this Court acts as a reviewing court, it should not consider for the first time on appeal issues that the trial court did not decide.").

III.

**{¶48}** MJM Holdings Inc.'s assignment of error is sustained. This Court declines to address Thomas Dickinson and Dickinson & Wheelock PC's assignment of error. The judgment of the Summit County Common Pleas Court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

CLAIR E. DICKINSON and CHRISTOPHER T. TEODOSIO, Attorneys at Law, for Appellant.

STEPHEN J. PRUNESKI, Attorney at Law, for Appellees.